**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: | § § § | CASE NO: 23-11908 |
| KATIE WILSON AND RONALD E. WILSON, | § § § | CHAPTER 13 |
| DEBTORS. | § § § § | SECTION A |
| PROGRESSIVE SECURITY INSURANCE COMPANY AND NARINDER GUPTA, | § § § § § § | |
| PLAINTIFFS, | § § | ADV. NO. 24-1058 |
| V. | § § § | |
| RONALD WILSON AND KATIE WILSON, | § § § § | |
| DEFENDANTS. | § § § § | |

**MEMORANDUM OPINION AND ORDER**

This Court held an evidentiary hearing on May 19, 2025, to consider the *Motion To Dismiss, For Declaratory Judgment and/or Injunctive Relief* (the "Motion For Declaratory Judgment"), [Adv. No. 24-1058, ECF Doc. 21], filed by Progressive Security Insurance Company and Narinder M. Gupta (together, "Progressive"); and the opposition to the Motion, [ECF Doc. 31], filed by counsel on behalf of Ronald Wilson and Katie Wilson. The Court heard testimony from Katie Wilson and admitted into evidence Progressive Exhibits 1–3, 4-A to 4-D, and 5. [Adv. No. 24-1058, ECF Doc. 38]. At the conclusion of the hearing, the Court took the matter under advisement. [Adv. No. 24-1058, ECF Doc. 40].

Based upon the evidence, the records in the main bankruptcy case and this adversary proceeding, and arguments of counsel, the Court GRANTS IN PART and DENIES IN PART the Motion For Declaratory Judgment, finding as follows:[1]

## JURISDICTION AND VENUE

This Court has jurisdiction to grant the relief provided for herein pursuant to 28 U.S.C. § 1334 and the Order of Reference of the District Court dated April 22, 2021. The matters presently before the Court constitute core proceedings that this Court may hear and determine on a final basis under 28 U.S.C. § 157(b). The venues of the Wilsons' chapter 13 case and this adversary proceeding are proper under 28 U.S.C. §§ 1408 and 1409(a).

## NOTICE

Notice of both the Motion for Declaratory Judgment and the Opposition was sufficient and constituted the best notice practicable. All persons affected by this Memorandum Opinion were afforded a full and fair opportunity to be heard prior to and during the evidentiary hearing. Notice of the relief granted herein has been given to all persons affected by this decision and complies with due process.

## FINDINGS OF FACT

### Witness Credibility Determinations

Counsel for Progressive called Ronald Wilson to testify; however, Mr. Wilson refused to swear or affirm to tell the truth on the witness stand, stating that taking an oath was offensive to his religious beliefs. *See* Hr'g Rec'g 10:18–:21 (May 19, 2025). The Court acknowledged his

---

[1] These findings of fact and conclusions of law constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. To the extent that any of the following findings of fact are determined to be conclusions of law, they are adopted and shall be construed and deemed conclusions of law. To the extent any of the following conclusions of law are determined to be findings of fact, they are adopted and shall be construed and deemed as findings of fact.

2

inability to swear an oath, and provided the affirmation option as an alternative to swearing an oath, but Mr. Wilson stated that he was unable to distinguish between an oath and an affirmation. *See id.* "The requirement that a witness affirm that he is telling the truth is an established rule of procedure design to assure fairness and reliability." *Kaltenbach v. Breaux*, 690 F. Supp. 1551, 1556 (W.D. La. 1988). A litigant's due process rights may not be exercised in total disregard for established rules of procedure. *See id.* (citing *Chambers v. Mississippi*, 410 U.S. 284 (1972)). Accordingly, the Court denied Mr. Wilson the opportunity to testify. *See id.* ("[The litigant] was given an alternative to the oath which he declined. [The litigant's] failure to testify under these circumstances was no denial of [the litigant's] right to a fair trial.").

Counsel for Progressive then called Katie Wilson to testify, who willingly provided testimony under oath; however, during the course of her testimony, the Court observed Ronald Wilson attempting to coach his wife as she testified by nodding or shaking his head after each question posed to her. The Court cautioned Mr. Wilson against such interference. *See* Hr'g Rec'g 11:05 (May 19, 2025). Although Mrs. Wilson presented as a deliberate and thoughtful witness, her testimony revealed that she had deferred to her husband for actions taken in state court litigation as well as the bankruptcy case and thus her testimony was unhelpful to the Court. Further, the Court finds her testimony to be compromised insofar as her husband had attempted to influence her answers from counsel's table. Thus, the Court gives little weight to her testimony.

After Katie Wilson testified, Ronald Wilson then changed his mind and stated that he was willing to testify under oath. *See* Hr'g Rec'g 12:01–:02 (May 19, 2025). The Court viewed Mr. Wilson's change in position as a disingenuous litigation tactic which would prejudice the opposing party as well as the litigation process and denied Mr. Wilson the opportunity to testify. *See id.*

3

**The Wilsons' Bankruptcy Case and State Court Litigation**

Represented by bankruptcy counsel, the Wilsons filed a petition for bankruptcy relief under chapter 13 of the Bankruptcy Code on November 1, 2023; both Ronald and Katie Wilson e-signed the petition and affirmed that each had "examined this petition, and . . . declare under penalty of perjury that the information provided is true and correct." [No. 23-11908, ECF Doc. 1]; Progressive Ex. 4-A. In e-signing the petition, both affirmed the following statement: "I understand that making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both." [No. 23-11908, ECF Doc. 1]; Progressive Ex. 4-A.

Contemporaneously with the filing of the bankruptcy petition, the Wilsons filed a document entitled *Schedule A/B: Property* ("Initial Schedule A/B"), which identifies all assets of the bankruptcy estate. [No. 23-11908, ECF Doc. 9]; Progressive Ex. 4-A. Both Ronald and Katie Wilson e-signed a *Declaration About an Individual Debtor's Schedules* under penalty of perjury, acknowledging that "[i]f two married people are filing together, both are equally responsible for supplying correct information" and that they "have read the summary and schedules filed with this declaration and that they are true and correct." [No. 23-11908, ECF Doc. 1, at 10]; *see also* Hr'g Rec'g 11:48 (May 19, 2025). Question 33 of Initial Schedule A/B asks whether the Wilsons hold "[c]laims against third parties, whether or not [they] have filed a lawsuit or made a demand for payment." The Wilsons disclosed one lawsuit, a "PI Claim vs. Felipe's - Attorney Joseph Barbie," referencing a personal-injury lawsuit against Felipe's Ventures LLC (the "Felipe's Lawsuit"). [No. 23-11908, ECF Doc. 9]; Progressive Ex. 4-A.

Also contemporaneously with the filing of their bankruptcy petition, the Wilsons filed a document entitled *Statement of Financial Affairs for Individuals Filing for Bankruptcy* (the "Initial

4

SOFA") [No. 23-11908, ECF Doc 1, at 11]; Progressive Ex. 4-A. Both Ronald and Katie Wilson e-signed the Initial SOFA, affirming that they both "read the answers on this Statement of Financial Affairs and any attachments" and "declar[ing] under penalty of perjury that the answers are true and correct." [No. 23-11908, ECF Doc 1, at 16]; Progressive Ex. 4-A. Question 9 of the Initial SOFA asked the question: "Within 1 year before you filed for bankruptcy, were you a party in any lawsuit, court action, or administrative proceeding?" The Wilsons answered "No." [No. 23-11908, ECF Doc 1, at 12]; Progressive Ex. 4-A.

On April 4, 2023, approximately six months before filing for bankruptcy relief, however, the Wilsons filed a lawsuit against Progressive and other defendants in the Civil District Court for the Parish of Orleans, State of Louisiana, alleging mental and physical pain and suffering, physical disability, medical expenses, loss of enjoyment of life, and other damages sustained by the Wilsons as a result of a car accident (the "State Court Litigation"). *See* Hr'g Rec'g 10:25–:26 (May 19, 2025); Progressive Ex. 1. The Wilsons failed to list the State Court Litigation on Initial Schedule A/B and the Initial SOFA. [No. 23-11908, ECF Docs. 1 & 9]; Progressive Ex. 4-A. While the Wilsons' bankruptcy case proceeded, Ronald Wilson continued to participate in discovery in the State Court Litigation. On May 1, 2024, Ronald Wilson gave deposition testimony (the "Deposition") in the State Court Litigation. *See* Progressive Ex. 3. Mr. Wilson testified that, although he was taking medications prescribed by a doctor, his ability to recall or understand the questions posed to him at the Deposition was not impaired. *See id.* When asked whether he had ever filed for bankruptcy relief, Mr. Wilson answered "no." *See id.* (Tr. 16:21–23).

Meanwhile, the Wilsons continued to participate in their bankruptcy case. On February 5, 2024, and again on August 1, 2024, the Wilsons amended their proposed bankruptcy plan, yet still failed to disclose the State Court Litigation. [No. 23-11908, ECF Docs. 38 & 67]. On August 19,

5

2024, the Court confirmed that the Wilsons' second amended plan. [No. 23-11908, ECF Doc. 71]. The Confirmation Order provides that "proceeds from lawsuits or settlements . . . payable to [the Wilsons] shall be turned over to the trustee for administration," and that the Wilsons "shall provide the trustee, at least once every six months until the case is closed, a report of the status of any pending or potential lawsuit in which the debtors are or may be a plaintiff." *See id*. Under the confirmed plan, the Wilsons will distribute to general unsecured creditors only 13.47% of an approximate $43,700 in unsecured claims. *See id*.

On October 25, 2024, Progressive initiated the instant adversary proceeding, informing the Court of the Wilsons' undisclosed State Court Litigation and seeking a declaratory judgment that the Wilsons are judicially estopped from prosecuting the State Court Litigation. [Adv. No. 24-1058, ECF Doc. 1]. Less than three weeks later, on November 11, 2024, the Wilsons amended the Initial SOFA and Initial Schedule A/B to disclose the State Court Litigation for the first time in their bankruptcy case. [No. 23-11908, ECF Docs. 75 & 76]; Progressive Ex. 4-D.

## CONCLUSIONS OF LAW

**A. Legal Standards for Disclosures in Bankruptcy and Judicial Estoppel**

The Bankruptcy Code places "an express, affirmative duty" on debtors in bankruptcy proceedings "to disclose all assets, *including contingent and unliquidated claims*." *Browning Mfg. v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, 207–08 (5th Cir. 1999) (citing 11 U.S.C. § 521(a)(1)). That duty to disclose is continuous. *See id*. at 208. "The debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information . . . prior to confirmation to suggest that it may have a possible cause of action, then that is a 'known' cause of action such that it must be disclosed." *Id*. (internal quotation and citations omitted). Indeed, debtors must disclose all assets, even those they believe are worthless

6

or not property of the estate. *See Flugence v. Axis Surplus Ins. Co. (In re Flugence)*, 738 F. 3d 126, 130 & n.4 (5th Cir. 2013) (citing *United States v. Beard*, 913 F.2d 193, 197 (5th Cir. 1990)) (explaining that debtors have a "duty to disclose to the court the existence of assets whose immediate status in the bankruptcy is uncertain, even if that assets is ultimately determined to be outside of the bankruptcy estate"); *In re Robinson*, 292 B.R. 599, 607 (Bankr. S.D. Ohio 2003) ("[D]ebtors have the absolute duty to report whatever interests they hold in property, even if they believe their assets are worthless or unavailable to the bankruptcy estate. This is because the bankruptcy court, not the debtor, decides what property is exempt from the bankruptcy estate." (internal quotations and citations omitted)).

"Judicial estoppel is a common law doctrine that prevents a party from assuming inconsistent positions in litigation." *Superior Crewboats, Inc. v. Primary P & I Underwriters* (*In re Superior Crewboats, Inc.*), 374 F.3d 330, 334 (5th Cir. 2004). "[A]gainst the backdrop of the bankruptcy system . . . judicial estoppel must be applied in such a way as to deter dishonest debtors, whose failure to fully and honestly disclose all their assets undermines the integrity of the bankruptcy system . . . ." *United States v. GSDMIDEA City, L.L.C.*, 798 F.3d 265, 271 (5th Cir. 2015) (quoting *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011)). In fact, "the integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets." *In re Coastal Plains, Inc.*, 179 F.3d at 205 (quoting *Rosenshein v. Kelban*, 918 F. Supp. 98, 104 (S.D.N.Y. 1996)). "Thus, judicial estoppel can bar a plaintiff from proceeding with a claim when he or she failed to disclose that claim in a bankruptcy petition." *In re Vioxx Prods. Liab. Litig.*, 889 F. Supp. 2d 857, 860 (E.D. La. 2012). Indeed, "[j]udicial estoppel is particularly appropriate where . . . a party fails to disclose an asset to a bankruptcy court, but then pursues a claim in a

7

separate tribunal based on that undisclosed asset." *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 261–62 (5th Cir. 2012) (quoting *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005)).

"A court should apply judicial estoppel if (1) the position of the party against which estoppel is sought is plainly inconsistent with its prior legal position; (2) the party against which estoppel is sought convinced a court to accept the prior position; and (3) the party did not act inadvertently." *Jethroe,* 412 F.3d at 600 (citing *In re Coastal Plains, Inc.*, 179 F.3d at 206–07).

### B. The Wilsons' Conduct Satisfies All of the Elements of Judicial Estoppel

The Wilsons' conduct satisfies the first element of judicial estoppel. The Wilsons filed the State Court Litigation approximately six months before filing their chapter 13 bankruptcy petition. The Wilsons did not disclose the State Court Litigation in the bankruptcy proceedings for one year after filing their petition for bankruptcy relief—and only disclosed the State Court Litigation after being confronted by Progressive. The Wilsons understood that they had to disclose legal claims, as evidenced by the fact that they disclosed the Felipe's Lawsuit on Initial Schedule A/B and the Initial SOFA. The Wilsons have been and continue to be represented by bankruptcy counsel, and they e-signed declarations that they had read the bankruptcy documents, that their statements made on those documents were true and correct, and that they understood that concealing property or making false statements was punishable. Given those facts, the Court finds that the Wilsons certainly had "enough information" regarding a "possible cause of action" such that it must have been disclosed in their bankruptcy proceeding. *In re Coastal Plains*, 179 F.3d at 206–07.

In light of the Wilsons' express, affirmative, and continuous duty to disclose all assets in their bankruptcy case, their "omission of the personal injury claim from their mandatory bankruptcy filings is tantamount to a representation that no such claim existed." *In re Superior Crewboats, Inc.*, 374 F.3d at 335. Prior to Progressive's interjection, the Wilsons failed to fulfill

that duty, representing to the Court through omission that no such State Court Litigation against Progressive existed. Meanwhile, the Wilsons continued to pursue recovery in the State Court Litigation, and, as evident from Ronald Wilson's deposition in that case, took steps to conceal the bankruptcy filing from Progressive. As stated in *In re Superior Crewboats*, "[s]uch blatant inconsistency readily satisfies the first prong of the judicial estoppel inquiry." *Id*.

The second element of judicial estoppel is also met because this Court accepted the Wilsons' omission of the State Court Litigation when it confirmed their chapter 13 plan. As the Fifth Circuit has instructed:

> [T]he "judicial acceptance" requirement "does not mean that the party against whom the judicial estoppel doctrine is to be invoked must have prevailed on the merits. Rather, judicial acceptance means only that the first court has adopted the position urged by the party, either as a preliminary matter or as part of a final disposition."

*In re Coastal Plains, Inc.*, 179 F.3d at 206 (quoting *Reynolds v. Comm'r of Internal Revenue*, 861 F.2d 469, 473 (6th Cir. 1988)); *see also In re Superior Crewboats, Inc.*, 374 F.3d at 335. "In chapter 13 cases, debtors file schedules on which the chapter 13 trustee and the court rely to confirm chapter 13 plans." *In re Miller*, 347 B.R. 48, 55 (Bankr. S.D. Tex. 2006). "In th[at] chapter, the discharge occurs only if the plan is confirmed; therefore, false statements in the schedules . . . are effectively 'accepted' by the Court." *Id*. The Wilsons took the position in their bankruptcy case that the only lawsuit to which they were a party within the year prior to filing their bankruptcy petition was the Felipe's Lawsuit. [No. 23-11908, ECF Doc. 9]; Progressive Ex. 4-A. The Court accepted that position when it confirmed the Wilsons' chapter 13 plan. [No. 23-11908, ECF Doc. 71].

As to the third and final element of judicial estoppel, the Wilsons' nondisclosure of the State Court Litigation to this Court would be considered inadvertent only if they "either lack[] knowledge of the undisclosed claims or ha[ve] no motive for their concealment." *In re Coastal*

9

*Plains*, 179 F.3d at 210 (emphasis omitted). As discussed, the record establishes that the Wilsons did not lack knowledge of the State Court Litigation. The Fifth Circuit has consistently held that debtors have a motivation to conceal where, as here, they stand to "reap a windfall had they been able to recover on the undisclosed claim without having disclosed it to the creditors." *In re Superior Crewboats, Inc.*, 374 F.3d at 336. "Such a result would permit debtors to conceal their claims, get rid of their creditors on the cheap, and start over with a bundle of rights." *Id*. (internal citation and punctuation omitted). For that reason, "the motivation sub-element [of judicial estoppel] is almost always met if a debtor fails to disclose a claim or possible claim to the bankruptcy court. Motivation in this context is self-evident because of potential financial benefit resulting from the nondisclosure." *Love v. Tyson Foods, Inc*., 677 F.3d 258, 262 (5th Cir. 2012) (internal quotations and citation omitted).

Like the debtor in *In re Superior Crewboats, Inc*., the Wilsons had the requisite motivation to conceal the State Court Litigation, as they would have certainly reaped a windfall if they obtained a recovery on their undisclosed claims to the exclusion of their creditors. Indeed, the Wilsons not only failed to disclose the State Court Litigation in the bankruptcy proceeding, but they continued to pursue the State Court Litigation. The Wilsons ultimately only disclosed the State Court Litigation when confronted by Progressive.

Regarding whether they acted inadvertently, Katie Wilson testified at the evidentiary hearing that she did not review the bankruptcy petition and amended filings "line by line [to make] sure all the information was correct," but asserted that she did not intentionally leave out the State Court Litigation against Progressive when the petition was filed. *See* Hr'g Rec'g 11:57–:59 (May 19, 2025). But as in *Love*,

> whether [Progressive or the Wilsons] would accrue an unfair detriment or benefit if the lawsuit were allowed to go forward *after [Progressive] forced [the Wilsons]*

10

> *to disclose [their] claims* is an entirely different issue than whether [the Wilsons] had a financial motive to conceal [their] claims against [Progressive] *at the time [the Wilsons] failed to meet [their] disclosure obligations*, which is the relevant time frame for the judicial estoppel analysis.

677 F.3d at 263 (citing *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1276 (11th Cir. 2010) ("When reviewing potential motive, the relevant inquiry is intent at the time of non-disclosure." (citation omitted)). "Because the doctrine [of judicial estoppel] is intended to protect the judicial system, *rather than the litigants*, detrimental reliance by the opponent of the party against whom the doctrine is applied is not necessary." *Id.* at 261 (quoting *In re Coastal Plains, Inc.*, 179 F.3d at 205). The Court therefore concludes that the Wilsons' failure to disclose the State Court Litigation was not inadvertent.

Based on the record and evidence, the Court finds that Progressive has demonstrated that the Wilsons are barred from pursuing their prepetition claim against Progressive under the doctrine of judicial estoppel. Therefore, the Court grants Progressive's Motion For Declaratory Judgment and finds that the Wilsons are judicially estopped as a matter of law from pursuing the State Court Litigation against Progressive. For the reason stated in *In re Lymon*, No. 18-13128, 2020 WL 7388073, at *7–9 (Bankr. E.D. La. Jan. 15, 2020), the chapter 13 trustee does not have authority here to administer the State Court Litigation as an asset of the estate. Even if the chapter 13 trustee were able to liquidate the State Court Litigation, the Court estimates the State Court Litigation to have negligible value to the Wilson's creditors. The Wilsons' participation in the prosecution of the State Court Litigation is essential to obtaining a judgment against Progressive, if one is to be had and one can reasonably conclude that their participation in the State Court Litigation will sharply decline, if not cease altogether, now that they are judicially estopped from sharing in any recovery. But the State Court Litigation will nevertheless remain property of the estate that may be administered in the event that the case is ever converted to one under chapter 7, as a chapter 7

trustee has statutory authority to "collect and reduce to money property of the estate." 11 U.S.C. § 704(a)(1). To be clear: whether the Wilsons' chapter 13 case is completed successfully, dismissed, or converted to one under chapter 7, this Court orders pursuant to 11 U.S.C. § 105(a) that the State Court Litigation remain an asset of the estate, never vesting in the Wilsons. *See id*. (citing *In re Derosa-Grund*, 544 B.R. 339, 383–84 (Bankr. S.D. Tex. 2016)).

## CONCLUSION

Based on the foregoing findings of fact and conclusions of law,

**IT IS ORDERED** that Progressive's Motion For Declaratory Judgment is **GRANTED IN PART** to the extent it seeks a finding of this Court that the Wilsons are judicially estopped from pursuing the State Court Litigation.

**IT IS FURTHER ORDERED** that Progressive's Motion For Declaratory Judgment is **DENIED IN PART** to the extent it seeks dismissal of the State Court Litigation with prejudice.

A separate judgment on the Complaint consistent with this *Memorandum Opinion and Order* will be entered contemporaneously and in accordance with Bankruptcy Rules 7054 and 9021.

New Orleans, Louisiana, June 10, 2025.

_____
MEREDITH S. GRABILL
UNITED STATES BANKRUPTCY JUDGE